**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

VERANO HOMEOWNERS
ASSOCIATION, INC., a Florida
Non-profit corporation,

        Plaintiff,

v.                                 Case No. 3:18-cv-1119-J-34JRK

BEAZER HOMES CORP., a
Foreign corporation, et al.,

        Defendants.
_____

BEAZER HOMES CORP., a
Foreign corporation, et al.,

        Third-Party Plaintiffs,

v.

ADMIRAL WINDOWS & DOORS,
INC., a Florida corporation, et al.,

        Third-Party Defendants.
_____

## REPORT AND RECOMMENDATION[1]

      This cause is before the Court on Third-Party Defendant Raney Construction, Inc.'s ("Raney(s)") Motion to Stay and Compel Arbitration (Doc. No. 73; "Motion"), filed August 19, 2019. Beazer Homes, LLC, formerly known as Beazer Homes Corp., responded in opposition to the Motion on September 3, 2019. See Opposition to Raney's Motion to

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Stay and Compel Arbitration (Doc. No. 80; "Response"). Then, with leave of Court, <u>see</u> Order (Doc. No. 83), Raney replied on September 17, 2019, <u>see</u> Raney's Reply to Beazer Homes Corp.'s Response to Raney's Motion to Compel Arbitration (Doc. No. 87; "Reply"). The Motion was referred to the undersigned by the Honorable Marcia Morales Howard, United States District Judge, for a report and recommendation regarding an appropriate resolution. <u>See</u> Order (Doc. No. 75), entered August 20, 2019. Having considered the procedural posture of the case, the Motion, and all relevant matters, the undersigned recommends that the Motion be granted for the reasons stated herein.

## I.  Procedural History/Background

Plaintiff, Verano Homeowners Association, Inc. ("Plaintiff" or "the Association"), initiated this action on April 26, 2018 by filing a Complaint in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida against Defendants Beazer Homes Corp. and Beazer Homes LLC (Doc. No. 2). (Plaintiff believes that Defendant Beazer Homes LLC is the successor in interest to Defendant Beazer Homes Corp.; accordingly, they are collectively referred to as "Defendants" or "Beazer"). Defendants removed the case to this Court on September 18, 2018 (Doc. No. 1). Thereafter, the Court entered an Order on September 20, 2018 (Doc. No. 4) striking the Complaint as an impermissible shotgun pleading and required an amended complaint to be filed no later than October 4, 2018. Plaintiff timely filed a Corrected First Amended Complaint and Demand for Jury Trial ("Amended Complaint") on October 4, 2018 (Doc. No. 6).

The Amended Complaint is brought by the Association "in its own right and on behalf of its members pursuant to Section 720.303(1) of the Florida Statutes," Am. Compl. at 2 ¶ 6, which allows a homeowner's association to "institute, maintain, settle, or appeal

actions or hearings in its name on behalf of all members concerning matters of common interest to the members . . . ." The Amended Complaint concerns real property known as the Verano at Bartram Park ("Verano"), "a planned community consisting of 256 units in forty-one residential buildings and a clubhouse building." Id. at 2 ¶ 3. "Beazer was the developer of the Association" and "also acted as the general contractor for the construction of the Verano." Id. at 3 ¶ 8.

The suit was brought to address allegedly negligent and deficient construction of the common areas and other matters of common interest to the members of the Association. Id. at 1-2 ¶ 1. The Amended Complaint lists numerous alleged defects and deficiencies in the construction, including:

> a. Improperly installed roofing components;
> b. Damaged and deteriorated roof shingles along headwall conditions;
> c. Water intrusion under windows causing excessive cracking of the stucco, water staining and bubbling paint;
> d. Excessive water staining and cracking of the wood-framed stucco due to improperly installed stucco;
> e. Blocked drainage paths at floor-line transitions and control joints trapping water behind the stucco; and
> f. Improper paint application resulting in bubbling and peeling paint.

Id. at 5 ¶ 18. There are four counts in the Amended Complaint: 1) a violation of the building code, pursuant to Section 553.84 of the Florida Statutes (count I); negligence (count II); breach of implied warranties (count III); and breach of contract (count IV). Id. at 6-13.

Defendants answered the Amended Complaint on October 26, 2018. See Beazer's Answer to Plaintiff's Corrected First Amended Complaint (Doc. No. 10). Thereafter, with leave of Court, see Order (Doc. No. 23), Defendants on June 7, 2019 filed a third-party complaint (Doc. No. 25; "Third-Party Complaint") naming as Third-Party

Defendants eighteen sub-contractors that performed construction work at the Verano and bringing 108 counts. Later, Beazer voluntarily dismissed without prejudice two Third-Party Defendants, leaving sixteen. See Motions (Doc. Nos. 92-93); Order (Doc. No. 95), entered October 7, 2019.

The Third-Party Defendant at issue here is Raney Construction, Inc. ("Raney"), that "supplied and installed the framing systems and associated components" at the property. Third-Party Complaint at 8 ¶ 35. Raney is named in counts 73-78, alleging breach of contract for defective work (count 73); breach of contract for insurance obligations (count 74); contractual indemnification (count 75); negligence (count 76); common law indemnity (count 77); and violation of the Florida Building Code, Section 553.84 of the Florida Statutes (count 78). Third-Party Complaint at 95-102.

Every Third-Party Defendant that has appeared and remains in the case, with the exception of Raney, has answered the Third-Party Complaint (Doc. Nos. 49-50, 58, 66, 79, 86, 94, 112, 117). Raney opted to bring the instant Motion.

## II. Motion

In the Motion, Raney seeks to stay litigation on the Third-Party Complaint, only as it pertains to Raney, and to compel arbitration between Beazer and Raney. Motion at 1. In support of the contention that the matter has to be arbitrated, Raney points to the construction contract entered into between Raney and Beazer that contains a mandatory arbitration clause. Id. at 3 (citing Third-Party Complaint at 8-9 (Doc. No. 25-7; "Contract")).[2]

---

[2] Raney being the sponsor of a motion to compel arbitration is surprising because the Contract at issue appears to be a form Contract that Beazer requires all of its subcontactors to execute, and for that reason, the terms (including the arbitration clause) are likely more favorable to Beazer than to Raney.

- 4 -

Responding, Beazer argues that the Court should look to the intention of the parties in construing the Contract and arbitration clause. Response at 6. According to Beazer, the parties never intended to arbitrate a claim such as this one, because there is an exception to mandatory arbitration that permits Beazer to join Raney in any forum in which Beazer is being sued by a homeowner. Id. at 6-8. According to Beazer, that exception applies in this case. Id.

The crux of the instant dispute, as Beazer and Raney argue it, is narrow. Central to their dispute is what "homeowner" means in the Contract and whether the Association qualifies as a homeowner, given that it is bringing suit "in its own right" and on behalf of the individual owners. See id. at 6-9; Reply at 3-6.

### III.  Discussion

When determining whether to compel arbitration, generally a court considers so-called "gateway" matters. Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1027 (11th Cir. 2003) (citing Green Tree Fin. Corp v. Bazzle, 539 U.S. 444, 452 (2003)). In other words, the default rule is that a court should decide "'such issues as are essential to defining the nature of the forum in which a dispute will be decided.'" Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1261 (11th Cir. 2003) (quoting Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085-86 (8th Cir. 2001)). Specifically, the following factors should be considered: 1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived. Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999) (naming factors); see Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1370-79 (11th Cir. 2005) (discussing validity of agreement and whether employment claims can be arbitrable); S&H Contractors, Inc.

v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) (discussing waiver of the right to arbitrate). There is a strong federal policy favoring arbitration; thus, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Here, the parties mainly dispute whether an arbitrable issue exists: i.e., whether the parties must arbitrate their particular claims given the procedural posture of the case. But, before turning to that question, the Court must decide the gateway question of whether the parties have to arbitrate the question of arbitrability, or whether the Court can decide it.[3]

The arbitration clause of the Contract is reproduced here:

> 10. **DISPUTE RESOLUTION.**
>
> (a) Any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof shall be resolved by mandatory binding arbitration. This provision covers any and all claims or disputes between CONTRACTOR and BEAZER, or parties acting on BEAZER'S behalf, arising out of or relating, directly or indirectly, to CONTRACTOR'S performance of the Work, this Agreement, or any breach thereof, whether in tort or in contract, provided, however, that the arbitrator is not authorized to hear or decide any class arbitration proceeding. All such claims and disputes shall be resolved by binding arbitration held in the state in which the Project is located, pursuant to the procedures described in this section. Pending final resolution of any dispute, including disputes over alleged changes in the Work, CONTRACTOR shall proceed diligently with performance of the Work or alleged change in the Work and BEAZER shall continue to make payments, each in accordance with the terms of this Agreement.
>
> (b) Any claims and disputes relating to this Agreement, or the breach thereof, including without limitation, claims for breach of contract or indemnity, that arise out of claims asserted by any Home Owner against Beazer ("Home Owner Dispute") shall be decided by arbitration in the same manner and under the same procedure as provided in the purchase and sale agreement between BEAZER and its Home Owner and BEAZER shall have a right to join CONTRACTOR into any such arbitration between BEAZER and Home Owner. However, if a Home Owner Dispute is not decided by arbitration, BEAZER shall have a right to join CONTRACTOR to the forum in which the Home Owner Dispute is to be decided and any claims or disputes between BEAZER and CONTRACTOR relating to this Agreement that arise out of the Home Owner Dispute shall be resolved in the same form as said Home Owner Dispute.
>
> (c) Upon its request, BEAZER shall be entitled to consolidation or joinder of any arbitration involving BEAZER or CONTRACTOR with related arbitrations involving other parties.
>
> (d) Unless otherwise provided for in the Purchase and Sale Agreement between BEAZER and Home Owner, the arbitration shall be conducted by Construction Arbitration Services, Inc., or such other reputable arbitration service as BEAZER shall select, in its sole discretion, at the time the request for arbitration is submitted. The rules and procedures of the designated arbitration organization that are in effect at the time the request for arbitration is submitted, will be followed. A copy of the applicable rules and procedures will be delivered to CONTRACTOR upon request.

---

[3] The parties do not directly address this threshold issue in their filings.

> (e) This Addendum shall be governed by the Federal Arbitration Act. (9 U.S.C. §1 et seq.) to the exclusion of any inconsistent state law, regulation or judicial decision. Any party to this Agreement may bring an action, including a summary or expedited proceeding, to compel arbitration of any controversy or claim to which this Agreement applies in any court having jurisdiction over such action. The award of the arbitrator shall be final and binding and may be entered as a judgment in any court of competent jurisdiction.
>
> (f) Notwithstanding anything to the contrary herein, in the arbitration of any dispute, the arbitrator shall be required to follow and apply the substantive state law as prescribed in this Agreement. Excepting for the CONTRACTOR's obligation under paragraph 5 above to defend and indemnify Beazer against claims by, or liability to, third parties, neither party will be liable to the other party or to CONTRACTOR's Agents, and expressly waive claims for, lost profits or punitive or consequential damages. Notwithstanding the foregoing, this waiver shall not limit (i) CONTRACTOR's insurance obligations and the rights and remedies of the Additional Insureds; (ii) amounts recoverable by BEAZER under the insurance policies that CONTRACTOR is required to maintain under this Agreement (or recoverable by the CONTRACTOR for the benefit of BEAZER in response to a claim by BEAZER), regardless of the nature of the claim or type of damage; and (iii) either Party's right to obtain specific performance and all other injunctive relief that may be available. CONTRACTOR shall include a similar waiver in favor of BEAZER in each of its subcontracts for performance of the Work on any Project. The Parties agree that the arbitrator shall not have the authority to award damages or forms of relief which exceed the damages or forms of relief expressly allowable under the terms of this Agreement.
>
> (g) Each party shall bear its own attorneys' fees and costs (including expert costs) for the arbitration. The arbitration filing fee and any other fees of the arbitration service, including, but not limited to, the arbitrators' fees shall be divided and paid equally as between CONTRACTOR and BEAZER. This filing fee shall not exceed the amount charged by the arbitration service for each arbitration. A copy of the current fee schedule of the arbitration service will be delivered to CONTRACTOR upon request. The arbitrator may, as part of any decision, award to the party prevailing at the arbitration any applicable filing fees or other arbitration fees paid by that party.
>
> WAIVER OF COURT AND JURY TRIAL. NOTICE: BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING THAT YOU HAVE READ AND UNDERSTAND THE FOREGOING BINDING ARBITRATION PROVISIONS AND THAT, EXCEPT WHERE PROHIBITED BY LAW, YOU AGREE TO HAVE ANY CLAIM OR DISPUTE DECIDED BY BINDING ARBITRATION AND THAT YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE CLAIM OR DISPUTE LITIGATED IN A COURT OR JURY TRIAL.
>
> CONTRACTOR ___ 11/16/09   BEAZER ___, 11/16/09

Contract at 8-9 ¶ 10.

"Under the [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S.Ct. 524, 529 (2019) (citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010)). The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." Id. at 527. (citations omitted). And, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Id. at 528. But, "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" Id. at 531 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944

(1995)). "Questions of arbitrability . . . stay with the court unless there is clear and unmistakable evidence that the parties intended to submit such questions to an arbitrator." JPay, Inc. v. Kobel, 904 F.3d 923, 930 (11th Cir. 2018) (emphasis in original, quotation and citation omitted); see also Metro. Life Ins. Co. v. Bucsek, 919 F.3d 184, 191 (2d Cir. 2019) (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) ("[I]n the absence of an arbitration agreement that clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator, the question whether the particular dispute is subject to an arbitration agreement 'is typically an issue for judicial determination.'")).

In Henry Schein, the parties agreed to arbitrate "[a]ny dispute arising under or related to [their a]greement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property. . .)." Henry Schein, 139 S. Ct. at 528. A suit was filed in a United States District Court, and one party "invoked the [FAA] and asked the District Court to refer the parties' antitrust dispute to arbitration." Id. But, the opposing party objected to arbitrating the dispute "because . . . [the] complaint sought injunctive relief, at least in part." Id. Relying on a judicially-created "wholly groundless" exception for denying requests to compel arbitration, the District Court found that the arbitration request was wholly groundless and denied it. Id. The United States Court of Appeals for the Fifth Circuit affirmed. Id. The United States Supreme Court then reversed, finding that the "'wholly groundless' exception is inconsistent with the text of the [FAA] and with [Supreme Court] precedent."[4] Id. at 529; see id. at 531. The Court

---

[4] Even before Henry Schein, the United States Court of Appeals for the Eleventh Circuit did not recognize the "wholly groundless" exception. See Jones v. Waffle House, Inc., 866 F.3d 1257, 1268-70 (11th Cir. 2017).

- 8 -

determined that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Id. at 531. But because the Fifth Circuit had not previously addressed whether the contract at issue in Henry Schein "in fact delegated the arbitrability question to an arbitrator," the case was remanded with instructions to address that issue in the first instance. Id.

On remand, the Fifth Circuit found that the arbitration provision did not clearly and unmistakably delegate to the arbitrator the question of arbitrability of claims for injunctive relief. Archer & White Sales, Inc. v. Henry Schein, Inc., 935 F.3d 274, 279-82 (5th Cir. 2019). The provision did incorporate the AAA arbitration rules, which expressly provide that the arbitrator has "'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" Id. at 279-80 (quoting AAA Rule 7(a)). So, the arbitration agreement "delegat[ed] the threshold arbitrability inquiry to the arbitrator for at least some category of cases." Id. at 280. But, the Fifth Circuit found that the "carve-out clause"—excepting actions seeking injunctive relief—did not incorporate the AAA rules; therefore, the parties did not clearly and unmistakably agree to arbitrate the arbitrability of those types of actions. Id. at 280-82; see also NASDAQ OMX Grp., Inc. v. UBS Secs., LLC, 770 F.3d 1010, 1031-32 (2d Cir. 2014) (relevant agreement did "not clearly and unmistakably direct that questions of arbitrability be decided by AAA rules; rather, it provide[d] for AAA rules to apply to such arbitrations as may arise under the Agreement"). In other instances when parties specifically incorporated the AAA rules in an arbitration clause and either did not include any carve-out clauses or included carve-out clauses that still incorporated the AAA rules, courts have determined that the parties

clearly and unmistakably agreed to arbitrate arbitrability. See, e.g., Crawford Professional Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 262-63 (5th Cir. 2014); Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co., 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases); Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005).

There are other circumstances, more applicable here, in which the Eleventh Circuit has found that the parties clearly and unmistakably agreed to arbitrate the question of arbitrability through the specific language they employed (rather than the incorporation of particular rules).[5] Those include situations in which contracts stated that "'the Arbitrator ... shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement,'" Jones, 866 F.3d at 1267 (quoting arbitration clause); or "stat[ed] that, except for wage disputes, 'any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, . . . shall be referred to and finally resolved by arbitration,'" Martinez v. Carnival Corp., 744 F.3d 1240, 1245 (11th Cir. 2014) (quoting arbitration clause). As the Eleventh Circuit recently recognized, other circuits are in accord. See JPay, Inc., 904 F.3d at 929 (citing Wells Fargo Advisors, Inc. v. Sappington, 884 F.3d 392, 395 (2d Cir. 2018) (interpreting a contract stating that "[a]ny controversy relating to your duty to arbitrate hereunder, or to the validity or enforceability of this arbitration clause, or to any defense to arbitration, shall also be arbitrated"); Robinson v. J & K Admin. Mgmt. Servs.,

---

[5] Here, the Contract gives Beazer discretion on what service conducts the arbitration and indicates that "the rules and procedures of the designated arbitration organization that are in effect at the time the request for arbitration is submitted, will be followed." Contract at 9, ¶ 10(d); see also Purchase and Sale Agreement (Doc. No. 6-1), at 18 (incorporated by Contract). This language does not evince a clear and unmistakable intent to arbitrate arbitrability because the applicable rules can change with the arbitration service employed.

- 10 -

Inc., 817 F.3d 193, 198 (5th Cir. 2016) ("The agreement required arbitration of ... 'claims challenging the validity or enforceability of this Agreement ... or challenging the applicability of the Agreement to a particular dispute or claim.'" Id. at 194.)).

Here, the undersigned finds that the parties have agreed to arbitrate the question of whether their particular dispute is subject to arbitration. As reproduced above, in the very first sentence of the "DISPUTE RESOLUTION" paragraph, the Contract states that "[a]ny dispute arising out of or relating to this Agreement or the breach, termination, or validity thereof shall be resolved by mandatory binding arbitration." Contract at 8 ¶ 10(a) (emphasis added). Put another way, "Any dispute arising out of or relating to" the Contract, see id.; including the dispute of whether a claim or claims must be arbitrated, must be resolved by arbitration: "'any disputes means all disputes, because any means all.'" Jones, 866 F.3d at 1267 (quoting Anders, 346 F.3d at 1028) (internal alteration omitted). The Contract language evinces "clear and unmistakable" intent of the parties for an arbitrator, not a court, to decide the gateway question of arbitrability. See, e.g., Jones, 866 F.3d at 1267; Martinez, 744 F.3d at 1245.

It is true, as Beazer points out, that the next subsection of the paragraph discusses whether so-called "Home Owner" disputes must be arbitrated and the circumstances under which arbitration is not mandatory. See id. at 9 ¶ 10(b). But, paragraph 10(a), with its broad and sweeping "any dispute" language, applies to this situation regardless of whether and to what extent paragraph 10(b) does—and the language employed in paragraph 10(a) gives the arbitrator the sole discretion to decide whether this dispute is covered by paragraph 10(b). Accordingly, this Court cannot decide whether Beazer and Raney must arbitrate their particular dispute—that decision is for an arbitrator in the first instance.

### IV.  Conclusion

For all of the foregoing reasons, it is

**RECOMMENDED**:

1. That Third-Party Defendant Raney Construction, Inc.'s Motion to Stay and Compel Arbitration (Doc. No. 73) be **GRANTED**;

2. That the parties be ordered to submit Beazer's claims against Raney to arbitration in accordance with the Contract;

3. That this case be **STAYED** only as to the Third-Party claims against Raney[6] pending either a determination by the arbitrator that the claims should not be arbitrated pursuant to the Contract, or pending completion of substantive arbitration proceedings, whichever occurs; and

4. That Beazer be **DIRECTED** that if the arbitration proceedings are not completed within 120 days of a final order being entered on the instant Motion, Beazer shall file a status report at that time and every 120 days thereafter until the arbitration proceedings are completed.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on February 6, 2020.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

---

[6] As noted earlier, no other Third-Party Defendant has invoked the arbitration clause.

kaw
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record